UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| K.C., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 1:23-cv-00595-JPH-KMB |
| | ) |
| THE INDIVIDUAL MEMBERS OF THE | ) |
| MEDICAL LICENSING BOARD OF | ) |
| INDIANA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**Plaintiffs' Response in Opposition to Defendants' Motion to Stay Briefing on Motion for Class Certification**

I. **Introduction**

Senate Enrolled Act 480 ("S.E.A 480" or "the Act"), to be codified at Indiana Code § 25-1-22, imposes a prohibition on what it labels as "gender transition procedures" to transgender minors. Ind. Code § 25-1-22-13 (eff. July 1, 2023). The plaintiffs seek a preliminary injunction to prevent the Act from going into effect, arguing that denial of this gender-affirming care will cause the plaintiffs—transgender adolescents, their parents, a doctor, and a provider of health care—grave harm, including in the case of the plaintiff youth, profoundly serious psychological and physical harms up to and including suicide.

Because S.E.A. 480 is a statute that applies uniformly to, and injures, many youth, parents, physicians, and health-care practitioners in Indiana, the plaintiffs are seeking to

maintain this case as a class action and on April 21, 2023 filed their memorandum demonstrating that all the requirements for the grant of class certification under Federal Rule of Civil Procedure 23(b)(2) are met regarding the requested classes of youth, parents, and physicians/practitioners. (Dkt. 28). This case naturally fits within Rule 23(b)(2) as "[t]his rule was intended primarily to facilitate civil rights class actions, where the class representatives typically s[eek] broad injunctive or declaratory relief against discriminatory practices." *Penson v. Terminal Transport Co.*, 634 F.2d 989, 993 (5th Cir. 1981).

Rule 23(c)(1)(A) provides that a court is to rule on a class certification request "[a]t an early practicable time." If the plaintiffs succeed in obtaining a preliminary injunction, but there is no class certified as of July 1, 2023, the effective date of the Act, many hundreds of transgender youths in Indiana will be denied access to care that is not only medically necessary, but potentially lifesaving. This harm will extend not only to the youth, but to their parents, and to doctors/practitioners. The harm will also flow to untold numbers of future putative class members. The defendants have nevertheless sought to stay briefing on the motion for class certification until an unspecified time after this Court's ruling on the motion for preliminary injunction. There are no grounds for the stay. Moreover, granting the stay will cause certain injury if the injunction is granted, and the stay request should be denied.

## II. The legal standard

Of course, a "district court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). In determining the request for a stay, a court must "weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). But "[t]he proponent of a stay bears the burden of establishing its need." *Clinton*, 520 U.S. at 708 (citing *Landis*, 299 U.S. at 255).[1] The putative class is facing serious harm if the injunction is granted without the equitable relief benefitting the putative classes. Conversely, having to respond to the class motion now will not unduly burden the defendants.

## III. The defendants erroneously minimize the serious harm that will occur if the preliminary injunction is granted without certification of the classes and subclasses

The defendants' sole attempt to address the harm that will befall the putative class of transgender youth if a preliminary injunction is granted and a class has not been certified is to state that "while S.E.A. 480 goes into effect on July 1, 2023, the statute itself permits children currently undergoing 'gender transition hormone therapy' to continue

---

[1] This Court has noted that it "uses the following three factors to determine if a stay is warranted, whether a stay: '(1) will unduly prejudice or tactically disadvantage the non-moving party; (2) will simplify the issues in question and streamline the trial; and (3) will reduce the burden of litigation on the parties and the Court.'" *Indpls. Racquet Club, Inc. v. Cincinnati Ins. Co.*, No. 1:22-cv-471-JPH-DLP, 2022 WL 17513570, *1 (S.D. Ind. Dec. 8, 2022) (quoting *Irving Materials, Inc. v. Zurich Am. Ins. Co.*, No. 1:03-cv-0361-SEB-TAB, 2008 WL 1971468, at *2 (S.D. Ind. May 5, 2008)). In this case, the key issue is the prejudice that will flow to either party if a stay is granted or denied as the delay in briefing the class question will not ultimately simplify the issue, nor will it alter the eventual burden on the parties or the Court.

such therapy until December 31, 2023." (Dkt. 29 at 3). This ignores the actual harm that will occur if the classes are not immediately included within the ambit of a future preliminary injunction.

The putative class of transgender adolescent youth contains members who are receiving "puberty blocking drugs," and there is no provision extending this necessary therapy past June 30, 2023. *See* Ind. Code §§ 25-1-22-4 (eff. July 1, 2023) (defining "gender transition hormone therapy"); 25-1-22-11 (eff. July 1, 2023) (defining "puberty blocking drugs"); 25-1-22-13(d) (eff. July 1, 2023) (referring only to "gender transition hormone therapy"). Discontinuing putative class members' "puberty blocking drugs" will end medically necessary care and will cause the immediate onset of puberty that is discordant from their gender identity, which will be a significant source of distress. (Dkt. 26-2 at 22). And discontinuing the "gender transition hormone therapy" will cause transgender adolescents to experience physiological changes inconsistent with their gender identity, resulting in severe psychological effects, regardless of whether the therapy is withdrawn abruptly or titrated down to December 31, 2023. (*Id.*). Moreover, failure to certify the classes will result in youth who have not yet begun treatment being unable to obtain puberty blockers and gender-affirming hormones to stop the gender dysphoria that without the medications "can result in severe anxiety and depression, eating disorders, substance abuse, self-harm, and suicidality." (*Id.* at 35) (citation omitted). In summary, ending this necessary medical care for adolescents currently receiving it, or denying it to

[4]

those for whom it is necessary, will "lead to an increase in mental health problems and suicidality." *(Id.* at 23).

Without being included within the protections of a preliminary injunction, the putative class of parents will have to watch helplessly as their children suffer. And the doctors and other practitioners who are members of the putative class will have to choose between the risk to their licenses and their desire to follow the ethical requirements that they owe to their patients. Those medical practitioners who serve youth receiving Medicaid will also have to choose between the professional and other consequences for violating S.E.A. 480 on the one hand and violating federal Medicaid law and the Affordable Care Act, 42 U.S.C. § 18116(a), on the other. (*See* Dkt. 27 at 26-39). They all will suffer harm unless they are protected by a preliminary injunction.

There are times when class certification may not be strictly essential prior to or contemporaneously with a preliminary-injunction determination. For example, if a prosecutor is being sued to enjoin application of a statute, it can be presumed that if the law is preliminarily enjoined on its face, the prosecutor will not enforce it against putative class members. However, there can be no such presumption here. The defendants certainly do not provide assurances that they will apply any preliminary injunction on a class-wide basis without formal certification of the classes. Unless the classes and subclasses are certified, a preliminary injunction on behalf of the named plaintiffs will not guarantee that transgender youth will receive this medically necessary care and will

[5]

not prevent the tremendous harm that will occur. That certification is a necessity.

### IV.  The defendants overstate their burdens in responding to the class-certification motion

The defendants argue that the class determination should be delayed because they must conduct discovery "to determine numerosity for each individual class and subclass, whether the questions of fact and law are common to the class, whether the claims asserted are typical of the class, and whether the named plaintiffs are adequate class representatives." (Dkt. 29 at 3). The defendants' concern about the difficulty that this discovery will entail is overblown and is certainly not sufficient to overcome the certain harm faced by the members of the putative classes and subclasses.

As far as numerosity discovery is concerned, the defendants have already served document requests addressed to, among other things, numerosity, on Mosaic Health and Healing Arts, Inc. ("Mosaic"); Indiana University Health, Inc. ("I.U. Health"), of which the Riley Gender Health Program is a part; and on Eskenazi Hospital. (Ex. 1). The defendants have also served deposition notices to all three entities. (Ex. 2). The plaintiffs anticipate that the information disclosed by these entities will easily establish that the numerosity requirements are met. And given that the Indiana Family and Social Services Administration, a party to this litigation, provides Medicaid coverage of gender-affirming care to qualifying youth, the evidence necessary to establish numerosity for Subclasses 1-A and 3-A, consisting of Medicaid patients and providers, is likely already in the defendants' hands without any discovery at all.

[6]

The remaining class-action factors mentioned by the defendants—commonality, typicality, and adequacy—are essentially legal questions and appear not to need any more than limited discovery, if any at all. (*See* Dkt. 28 at 8-11). Nevertheless, the defendants argue that they may wish to conduct discovery to determine whether putative class members share "sufficiently common diagnoses, co-morbidities, treatment recommendations, and risks with other members of the putative class." (Dkt. 29 at 3). The reasons for this are not immediately clear. The present membership of the classes is defined in terms of youth receiving the soon-to-be-prohibited "gender transition procedures," their parents, and their health-care providers. Therefore, questions of commonality, typicality, and adequacy must focus on whether the common question of whether the legality and constitutionality of banning "gender transition procedures" unite the class and if so, whether there are reasons that the claims raised by the class members, which are solely focused on this common question, are not typical and whether the named plaintiffs are not adequate class representatives. As noted, these appear to be largely, if not entirely, legal questions. But in any event, the defendants have sought, and will be receiving, all of the plaintiff youth's medical records from Mosaic, Riley, and Eskenazi Hospital (Ex. 1 at 9-10, 25, 38), and this, combined with the other information that the defendants are seeking, should give them all the information they need to address any commonality, typicality, and adequacy concerns, as well as facts to address the numerosity requirement. Moreover, if the defendants believe that further discovery

is necessary, they certainly have time to conduct it prior to the June 2, 2023 due date for their response to the plaintiffs' motion for class certification. (Dkts. 22, 25).

The defendants argue that because of other responsibilities, their five attorneys simply do not have the time to address the class issue. (Dkt. 29 at 4). The plaintiffs' counsel are certainly not unsympathetic, or unfamiliar, with that general concern. On the other hand, as noted, the defendants are overstating what needs to be done for them to respond to the motion and are grossly underestimating the harm that will befall the putative class members without a preliminary injunction.

## V.    The defendants ignore the additional litigation that will ensue if the class issue is not ruled on prior to the issuance of a preliminary injunction

The defendants appear to believe that if this Court grants a preliminary injunction, then this will simplify their work efforts as they may respond to the class request at some point after the preliminary injunction is granted. This ignores the fact that if a preliminary injunction is granted and the class has not been certified, every current putative class member has the right on July 1, 2023, if not before, to file their own litigation seeking temporary restraining orders to prevent the Act from applying to them and may certainly choose to do so. Ultimately, this will be much more work for the defendants and this Court than it would be for the defendants to respond to the class motion now.

## VI.    Conclusion

Assuming that this Court grants a preliminary injunction, not extending that equitable relief to the requested classes and subclasses will certainly "unduly prejudice"

[8]

them. *Indpls. Racquet Club*, 2022 WL 17513570, at *1. No similar prejudice will be caused to the defendants by requiring them to respond to the class memorandum that was filed on April 21, 2023. This is particularly so given that this case seems paradigmatically appropriate for class treatment. Therefore, the defendants' motion to stay should be denied and they should be afforded the six weeks from the date the plaintiffs' memorandum was filed, until June 2, 2023 to file any response in opposition to the motion for class certification.

        Kenneth J. Falk
        Gavin M. Rose
        Stevie J. Pactor
        ACLU of Indiana
        1031 E. Washington St.
        Indianapolis, IN 4602
        317/635-4059
        fax: 317/635-4105
        kfalk@aclu-in.org
        grose@aclu-in.org
        spactor@aclu-in.org

        Chase Strangio, *Pro Hac Vice*
        Harper Seldin, *Pro Hac Vice*
        American Civil Liberties Union
        125 Broad Street
        New York, NY 10004
        212/549-2500
        cstrangio@aclu.org
        hseldin@aclu.org

        *Attorneys for Plaintiffs and the Putative Classes and Subclasses*