UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| K.C., et al., | ) |
|       Plaintiffs, | ) ) ) |
| v. | ) No. 1:23-cv-00595-JPH-KMB |
| THE INDIVIDUAL MEMBERS OF THE MEDICAL LICENSING BOARD OF INDIANA, in their official capacities, et al., | ) ) ) ) ) ) |
|       Defendants. | ) |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY BRIEFING ON MOTION FOR CLASS CERTIFICATION**

This case involves a multi-faceted challenge to a new statute that presents complex legal and factual issues. Responding to Plaintiffs' motion for a preliminary injunction will, by itself, require Defendants to (1) respond to a 45-page brief raising many novel constitutional, Medicaid, and Affordable Care Act claims; (2) depose many plaintiff-side witnesses who submitted supporting declarations—and potentially third-party witnesses; (3) review discovery from Plaintiffs and three third-parties; (4) respond to Plaintiffs' discovery requests; (5) prepare multiple defense experts; (6) evaluate and, if warranted, brief a motion to exclude testimony from Plaintiffs' experts; and (7) prepare a joint statement of undisputed facts. All of that must be done in a matter of weeks—during which time Defendants' attorneys must attend to responsibilities in other cases, including an oral argument, deposition, and briefs.

Forging ahead with briefing on class certification in the next few weeks would impose unwarranted burdens, especially since adequately briefing the class-certification issues would re-

quire conducting additional discovery. Although Plaintiffs attempt to downplay the need for discovery on class issues, the 11 declarations they submitted to support their class-certification motion belie their contention that the issues are primarily legal. And besides, the legal issues surrounding class certification are many. Briefing class certification will require addressing whether each of five proposed classes meets five separate prerequisites. Defendants need time to conduct discovery, research the legal issues, and brief the appropriateness of class certification.

Plaintiffs identify no prejudice to themselves from postposing briefing on class certification. They instead cite supposed harms to putative members of the proposed classes. But those persons are not yet parties to this lawsuit. Plaintiffs' argument assumes not only that they will prevail on class certification and then obtain a class-wide preliminary injunction—both doubtful assumptions—but also that gender transition treatments for minors are medically necessary. In fact, the opposite is true. As the governments of progressive countries like the United Kingdom, Finland, France, Norway, and Sweden have recognized, and the State's forthcoming expert reports will demonstrate, these "treatments"—which involve excessive doses of hormones and surgical mutilation of genitalia—are experimental and risky. They can permanently harm children in myriad ways, causing sterility, decreasing bone density, and affecting brain development.

## ARGUMENT

The Court may stay the briefing on class certification until after it rules on Plaintiffs' motion for preliminary injunction on class certification "for good cause." Fed. R. Civ. P. 16(b)(4); *see* S.D. Ind. L. R. 6-1(c)(3).[1] Good cause exists here, considering the significant demands on Defendants' attorneys and the additional demands briefing class certification would impose.

---

[1] Plaintiffs mistakenly cite (Dkt. 32, at 3) the legal standard applicable to a motion to stay "all proceedings." *Indianapolis Racquet Club, Inc. v. Cincinnati Ins. Co.*, 2022 WL 17513570, at *1

I.        **Good Cause Exists to Postpone Briefing on Class Certification**

Plaintiffs do not deny that their 45-page motion for preliminary injunction—which is accompanied by 17 declarations, including three expert declarations, totaling 106 pages and a 70-page excerpt from the State's Medicaid Plan—raises many complex issues. *See* Dkt. 29, at 2. Opposing that motion will require Defendants' attorneys to do the following in the next 30 days:

- Research, analyze, and brief equal-protection, due-process, First Amendment, Medicaid, and Affordable Care Act claims and multiple other issues.
- Depose Plaintiffs' three experts on complex issues and studies related to psychology, endocrinology, and gender dysphoria.
- Depose several of the 14 declarants who submitted declarations in support of Plaintiffs' motion and three third parties who have been subpoenaed.
- Obtain written discovery from Plaintiffs and three third parties who have been subpoenaed while responding to Plaintiffs' own discovery requests.
- Present information from up to six defense experts and potentially prepare and defend their depositions prior to June 2, 2023 briefing deadline.
- Evaluate and potentially file a motion to exclude testimony from Plaintiffs' experts.
- File a joint statement of stipulated facts. *See* Dkt. 38.

Undertaking these extensive tasks within a compressed timeline alone will impose substantial burdens on Defendants' attorneys. Defendants' attorneys, however, must devote time in the next 30 days to other matters, including an oral argument, deposition, and briefs. *See* Dkt. 29, at 4.

---

(S.D. Ind. Dec. 8, 2022); *see Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) (order "staying all proceedings"); *Clinton v. Jones*, 520 U.S. 681 (1997) ("postponement of the judicial proceedings"). Defendants, however, have only moved to "stay briefing on the Motion for Class Certification (Dkt. 10) until the Court rules on Plaintiffs' Motion for Preliminary Injunction (Dkt. 9)." Dkt. 29, at 1. Regardless, the balance of equities warrant postponement of the briefing.

Responding to Plaintiffs' class-certification motion would impose additional unique burdens. Under Federal Rules of Civil Procedure 23(a) and (b)(2), Defendants will need to address five prerequisites for five separate classes and subclasses. *See* Dkt. 29, at 2–3. Adequately addressing those factors may require additional discovery, including deposing some of the 11 declarants who submitted testimony supporting Plaintiffs' motion for class certification and subpoenaing additional third parties. *See id.* The limited time available for conducting discovery and briefing the pending motion for class certification is inadequate given the many other time-consuming responsibilities on Defendants' counsel.

Plaintiffs attempt to downplay the need for additional discovery, saying they "anticipate" forthcoming discovery responses will establish numerosity. Dkt. 32, at 6. Whether that is true remains to be seen. The documents have yet to be produced—and of course any responses may require follow-up requests. And Plaintiffs' contention that commonality, typicality, and adequacy requirements are "essentially legal questions" that require no discovery is incorrect. Dkt. 32, at 7. "[C]lass determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (citation omitted). For example, "certain specific factual defenses" may so "undermine typicality" that they defeat a motion for class certification altogether. *See, e.g.*, *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006).

Additional discovery could be relevant to several issues here. For example, whether providers in Indiana follow different standards of care, have different informed-consent procedures, and use different treatment protocols could be relevant for determining whether Rule 23(a)'s typicality, commonality, and adequacy requirements and Rule 23(b)(2)'s single-injunction require-

ment are met. Should providers follow different standards or protocols, that could undermine contentions that all care provided is medically necessary and scientifically supported. And if providers take different approaches to informing parents of risks, that could impact Plaintiffs' claims about parental rights. The State cannot determine what variations exist across Indiana without discovery. Similarly, whether class members share sufficiently common diagnoses, co-morbidities, treatment recommendations, and risks could be relevant to class certification. Plaintiffs' claim that S.E.A. 480 arbitrarily withholds medically necessary services assumes that all class members are so similarly situated that there can be no medical reason for limiting gender transitioning treatments for *any* class member—an assumption that, even under Plaintiffs' theory of the case, additional discovery may well refute. Time is needed to prepare a proper response to the class certification motion.

**II.     Putative Impacts on Non-Parties Provide No Basis for Denying the Motion**

Postponing briefing on class certification would not prejudice Plaintiffs. Plaintiffs allege no harm to themselves. They instead invoke (Dkt. 32, at 3–6) supposed harms to absent members of proposed classes, *i.e.*, non-parties, that could result from letting S.E.A. 480 take effect. "Before a class is certified," however, the named Plaintiffs and "no one else has a legally protected interest in maintaining the suit." *Kohen v. Pac. Inv. Mgmt. Co., LLC*, 571 F.3d 672, 676 (7th Cir. 2009); *see Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013) ("A nonnamed class member is not a party to the class-action litigation before the class is certified" (brackets omitted)). But the good cause standard "focuses on the diligence of the party seeking the extension," not supposed affects on strangers to the litigation. *Tyler v. JP Operations, LLC*, 2017 WL 6997842, at *1 (S.D. Ind. Aug. 30, 2017) (citation omitted). Similarly, the standard Plaintiffs cite for stays asks about the effects on "parties." Dkt. 32, at 3 n.1 (quoting *Indpls. Racquet Club, Inc. v. Cincinnati Ins. Co.*,

2022 WL 17513570, at *1 (S.D. Ind. Dec. 8, 2022)). Plaintiffs' argument assumes what they have yet to prove—that the proposed classes will be certified.

In asserting harms to non-parties, moreover, Plaintiffs assume that the puberty blockers, hormone therapies, and surgeries restricted by S.E.A. 480 are "medically necessary care" that have no downsides. Dkt. 32, at 4. In fact, the opposite is true. Defendants have not yet had an opportunity to submit their expert reports due to the compressed timeframe for briefing this motion, leaving the Court with a one-sided presentation of evidence. But Defendants' forthcoming reports will demonstrate what countries like the United Kingdom, Finland, France, Norway, and Sweden have concluded after extensive study: these so-called "treatments" for minors are "experimental" and risky. *What America Has Got Wrong About Gender Medicine*, The Economist (Apr. 5, 2023), https://www.economist.com/leaders/2023/04/05/what-america-has-got-wrong-about-gender-medicine.

As European authorities have observed, the evidence about the possible benefits of transitioning treatments is weak. The United Kingdom's National Institute for Health and Care Excellence has found that papers purporting to find benefits are of "very low" quality, "its poorest rating." *The Evidence to Support Medicalised Gender Transitions in Adolescents Is Worryingly Weak*, The Economist (Apr. 5, 2023), https://www.economist.com/briefing/2023/04/05/the-evidence-to-support-medicalised-gender-transitions-in-adolescents-is-worryingly-weak. French and Swedish authorities have reached similar conclusions. *Id.* Meanwhile, the dangers of blocking natural puberty in children, administering enormous doses of hormones, and surgically mutilating genitalia are very real. Those interventions can impact "brain development," "decreas[e] bone density," and leave children "infertile." *What America Has Got Wrong About Gender Medicine*, *supra*. As Swedish authorities have observed, the risks of physical interventions for minors "currently

outweigh the possible benefits." *The Evidence to Support Medicalised Gender Transitions in Adolescents Is Worryingly Weak*, *supra*.

Finally, to the extent that members of the proposed classes believe they will suffer harm, they are free to file their own cases and petition the courts for relief individually. *See* Dkt. 29, at 4. Plaintiffs' suggestion that separate lawsuits would impose even greater burdens on the State (Dkt. 32, at 8) overstates matters. Even if another action is filed, the State could use procedural devices to mitigate any remaining burdens, such as consolidation of the actions under Federal Rule of Civil Procedure 42(a). And in all events the State's work briefing a preliminary-injunction motion in this action would make it substantially easier to brief a preliminary-injunction motion in a second action raising similar claims.

## CONCLUSION

The Court should postpone briefing on class certification until after it rules on the motion for preliminary injunction.

|  |  |  |
|---|---|---|
|  |  | Respectfully submitted, |
|  |  | THEODORE E. ROKITA<br>Attorney General of Indiana |
| Date: May 3, 2023 | By: | /s/ *Thomas M. Fisher*<br>Thomas M. Fisher<br>Solicitor General |
|  |  | James A. Barta<br>Deputy Solicitor General |
|  |  | Corrine Youngs<br>Policy Director and Legislative Counsel |
|  |  | Melinda R. Holmes<br>Razi S. Lane<br>Deputy Attorneys General |
|  |  | Office of the Attorney General<br>302 W. Washington St., IGCS 5th Floor<br>Indianapolis, IN 46204-2770<br>Phone: (317) 232-6255<br>Fax: (317) 232-7979<br>Email: tom.fisher@atg.in.gov |